T.C. Memo. 1996-508


UNITED STATES TAX COURT


DOOR CONTROL SERVICES, INC., ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos.  9936-94, 10132-94,    Filed November 14, 1996.
        10140-94.


J. W. Tyner, for petitioners.

Stephen C. Coen, for respondent.

---

    [1]  Cases of the following petitioners are consolidated
herewith:  Door Control Services, Inc., docket No. 10140-94;
Jimmy Don and Sharon L. Gilchrist, docket No. 10132-94.

### MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  By notices of deficiency dated March 16, 1994, respondent determined the following deficiencies and additions to tax with respect to petitioners' Federal income taxes:

<u>Jimmy Don and Sharon L. Gilchrist, docket No. 10132-94</u>

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| <u>Year</u> | <u>Deficiency</u> | <u>Sec. 6653(b)(1)(A)</u> | <u>Sec. 6653(b)(1)(B)</u> | <u>Sec. 6653(b)(1)</u> | <u>Sec. 6661</u> |
| 1986 | $34,608 | $25,956 | [1] | -- | $8,652 |
| 1987 | 23,644 | 17,733 | [2] | -- | 5,911 |
| 1988 | 38,316 | -- | -- | $28,737 | 9,579 |

[1] 50 percent of the statutory interest due on $34,608.
[2] 50 percent of the statutory interest due on $23,644.

<u>Door Control Services, Inc., docket Nos. 9936-94 and 10140-94</u>

| | | Additions to Tax | | | | |
|---|---|---|---|---|---|---|
| <u>Year</u> | <u>Deficiency</u> | <u>Sec. 6653(b)(1)</u> | <u>Sec. 6653(b)(1)(A)</u> | <u>Sec. 6653(b)(1)(B)</u> | <u>Sec. 6653(b)(1)</u> | <u>Sec. 6661</u> |
| 1985 | $1,681 | $841 | -- | [1] | -- | -- |
| 1986 | 31,378 | -- | $23,534 | [2] | -- | $7,845 |
| 1987 | 21,025 | -- | 15,769 | [3] | -- | 5,256 |
| 1988 | 27,336 | -- | -- | -- | $20,502 | 6,834 |

[1] 50 percent of the statutory interest due on $1,681.
[2] 50 percent of the statutory interest due on $31,378.
[3] 50 percent of the statutory interest due on $21,025.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The only issue in these cases is whether petitioners are liable for the additions to tax for fraud.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  At the time the petitions were filed, Jimmy Don and Sharon L.

Gilchrist resided, and Door Control Services, Inc., had its principal place of business, in Ben Wheeler, Texas.

In 1973, the Gilchrists entered into the business of servicing automatic doors. On October 18, 1984, Door Control Services, Inc. (Door Control), was incorporated under Texas law. The Gilchrists were the only directors, officers, and shareholders of the corporation. From 1973 to 1988, the business was located in Tyler, Texas, where the Gilchrists resided with their four young children. In October of 1988, the family and the business moved to Ben Wheeler, Texas.

Mr. and Mrs. Gilchrist were both involved in conducting the business. While Mrs. Gilchrist managed administrative matters, Mr. Gilchrist supervised the corporation's employees. Mrs. Gilchrist deposited Door Control's cash receipts in bank accounts, wrote corporate checks, and maintained financial records for the corporation. The Gilchrists hired Earl D. Crim, Jr., a certified public accountant, to prepare corporate and individual Federal income tax returns relating to the years in issue.

At the beginning of each year, Mr. Crim typically would execute an engagement letter with each of his clients. Consistent with that practice, in each year that he prepared returns for petitioners, he sent an engagement letter to the Gilchrists (concerning their individual return) and one to Door Control (concerning its corporate return). The engagement

letters expressed the terms under which Mr. Crim would prepare the returns. Every engagement letter specified that Mr. Crim would prepare the tax returns based solely on the information provided by the Gilchrists and would not audit the Gilchrists' records to ascertain the accuracy of the information provided.

The Gilchrists routinely executed the engagement letters and returned them to Mr. Crim. After receiving the letter, Mr. Crim would begin to gather information to prepare the return. Each year, he asked petitioners to provide relevant documentation, such as deposit slips and bank account records. In addition, at the end of each year he sent the Gilchrists a questionnaire that solicited additional information necessary to prepare their individual return.

In preparing the individual returns, Mr. Crim relied on Forms 1099, bank statements, and answers provided in the questionnaire. In preparing the corporate returns, Mr. Crim determined Door Control's gross income and deductions by examining Mrs. Gilchrist's handwritten explanations on deposit slips and check stubs. For each year, Mr. Crim would total Door Control's deposit slips, subtract receipts that appeared (based on Mrs. Gilchrist's handwritten notes) to be nontaxable, and report the remainder as Door Control's gross income. He would also total check stubs that appeared (based on Mrs. Gilchrist's handwritten notes) to be deductible and report the resulting amounts as deductions on the return. The Gilchrists generally

did not provide, and Mr. Crim never requested, copies of the checks deposited to and drawn on the corporate account. Once a return was prepared, Mr. Crim would meet with the Gilchrists to discuss the return and obtain their signatures.

In 1989, the Internal Revenue Service selected for audit Door Control's 1986, 1987, and 1988 corporate returns. The audit was assigned to Revenue Agent Jeff C. Caid. In the course of his examination, Revenue Agent Caid reconciled deposit records for Door Control's corporate checking account with Forms 1099 received by Door Control from some of its large clients. He found that some of the income received by the corporation had not been deposited in the corporate checking account. Revenue Agent Caid suspected that corporate income had been diverted to the Gilchrists' individual bank account, and he commenced an audit of their 1986, 1987, and 1988 individual returns.

Revenue Agent Caid met with Mr. Gilchrist three times in August and September of 1989. During the course of the examination, he asked Mr. Gilchrist for the number and location of the personal and corporate bank accounts in use during 1986, 1987, and 1988. Mr. Gilchrist told him that they kept corporate funds separate from personal funds and that they had only one personal account entitled the "D and S Farms Account". Revenue Agent Caid discovered, however, that the Gilchrists had three, rather than one, personal bank accounts.

Subsequent to the discovery of the undisclosed personal accounts, Revenue Agent Caid and Special Agent Chisenhall of the Internal Revenue Service's Criminal Investigation Division met with the Gilchrists and examined all of petitioners' bank records. The agents found that Door Control failed to report, and diverted into the Gilchrists' personal accounts, corporate income of $94,983.42 in 1986, $66,173.01 in 1987, and $105,891.87 in 1988. The Gilchrists had not provided Mr. Crim with any information concerning this income.

On May 25, 1990, the Gilchrists met with Revenue Agent Caid and Special Agent Chisenhall and agreed to write and sign affidavits. Mr. Gilchrist admitted in his affidavit: (1) Door Control's 1986, 1987, and 1988 corporate returns were "not true, correct, and accurate"; (2) he and Mrs. Gilchrist misclassified personal expenses as business expenses; (3) Door Control paid and deducted personal expenses of the Gilchrists; and (4) on individual returns for 1986, 1987, and 1988, he failed to report personal income but deducted associated expenses. Mrs. Gilchrist adopted Mr. Gilchrist's statement in her own affidavit.

On its 1985, 1986, and 1987 corporate returns, Door Control carried back a net operating loss from 1988 and deducted a portion of this loss on each return. In addition, on its 1986, 1987, and 1988 corporate returns, Door Control (1) reported taxable income of $0, $6,997, and ($22,932), respectively, and

(2) paid and deducted the Gilchrists' personal expenses in the following amounts:

| Year | Truck Expense | Travel/Entertainment | Utilities | Total |
|------|------|------|------|------|
| 1986 | $1,317 | $2,076 | $3,782 | $7,175 |
| 1987 | 2,907 | 4,513 | 11,858 | 19,278 |
| 1988 | 1,694 | 1,987 | 2,305 | 5,986 |

On their 1986, 1987, and 1988 individual returns, the Gilchrists reported gross income of $11,237, $13,144, and ($582), respectively. In each year, they reported that they received no dividend income. The parties, however, have stipulated: (1) Door Control made payments relating to the Gilchrists' personal expenses; (2) the Gilchrists deposited into their personal bank accounts corporate income of $94,983.42 in 1986, $66,173.01 in 1987, and $105,891.87 in 1988; and (3) the payments for personal expenses and diverted corporate income are taxable to the Gilchrists as constructive dividends.

By information dated March 30, 1993, Mr. and Mrs. Gilchrist were each charged, pursuant to section 7206(1), with willfully making and subscribing a return which they did not believe to be true and correct. The information charged that each of them had willfully made and subscribed a Form 1040 for 1988 that they did not believe to be true and correct. It charged specifically that they failed to report diverted corporate income. Also on March 30, 1993, in accordance with a plea agreement, the Gilchrists each pleaded guilty to violation of section 7206(1). Pursuant to the plea agreement, the Gilchrists were required to pay

restitution in the amount of $115,564.30 or the amount of tax liability, whichever was less.

On March 16, 1994, respondent issued notices of deficiency to the Gilchrists and Door Control.

## OPINION

Respondent determined that petitioners were liable for additions to tax for fraud under section 6653(b)(1)(A) and (B) as in effect for 1986 and 1987, and section 6653(b)(1) as in effect for 1988. Respondent also determined that Door Control was liable for an addition to tax for fraud under section 6653(b)(1) as in effect for 1985.

Fraud is defined as an intentional wrongdoing designed to evade tax. Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958); Miller v. Commissioner, 94 T.C. 316, 332 (1990). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1236 (5th Cir. 1978); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To carry her burden of proof, respondent must show that (1) an underpayment of tax exists and (2) some portion of the underpayment is due to fraud. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). Where respondent determines fraud for several

years, respondent must separately prove fraud for each year. Drieborg v. Commissioner, 225 F.2d 216, 219-220 (6th Cir. 1955).

I.  Underpayment

To establish that Door Control is liable for the additions to tax for fraud, respondent must prove by clear and convincing evidence that Door Control underpaid taxes relating to 1985, 1986, 1987, and 1988.

On its 1985 return, Door Control claimed a deduction for a net operating loss carryback from 1988.  In 1988, Door Control reported a $22,932 loss.  After adjusting Door Control's 1988 income (i.e., adding $105,891.87 Door Control failed to report), the corporation did not have a loss in 1988.  As a result, Door Control was not entitled to a net operating loss carryback in 1985, and respondent has established an underpayment relating to Door Control's 1985 return.

With respect to the 1986, 1987, and 1988 corporate returns, Door Control understated its taxable income by failing to report corporate income of $94,983.42 in 1986, $66,173.01 in 1987, and $105,891.87 in 1988.  In addition, Door Control claimed over $30,000 in deductions in 1986, 1987, and 1988 for nondeductible expenditures made for the personal benefit of the Gilchrists. Consequently, respondent has established that Door Control underpaid its taxes relating to 1986, 1987, and 1988.

To establish that the Gilchrists are liable for the additions to tax for fraud, respondent must prove by clear and

convincing evidence that the Gilchrists underpaid taxes relating to 1986, 1987, and 1988.  In each of these years, the Gilchrists failed to report income diverted from Door Control and taxable to them as dividends.  During these years, the Gilchrists also failed to report over $30,000 of expenditures Door Control made for their personal expenses.  Consequently, respondent has established that the Gilchrists underpaid their taxes relating to 1986, 1987, and 1988.

II.  Fraudulent Intent

To establish that petitioners are liable for the additions to tax for fraud, respondent must prove by clear and convincing evidence that petitioners intended to evade taxes.  This burden is met where respondent proves conduct intended to conceal, mislead, or otherwise prevent the collection of taxes.  Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148.  Fraudulent intent is not to be imputed or presumed but rather must be established by some independent evidence.  Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969).

Because direct proof of the taxpayer's intent is rarely available, fraudulent intent may be established by circumstantial evidence and reasonable inferences drawn from the facts.  Spies v. United States, 317 U.S. 492, 498 (1943); Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984).  Indicia of fraud include consistent underreporting

of income tax liability, <u>Holland v. United States</u>, 348 U.S. 121, 137-139 (1954); concealing income from return preparers, <u>Korecky v. Commissioner</u>, 781 F.2d 1566, 1569 (11th Cir. 1986), affg. T.C. Memo. 1985-63; diverting corporate funds to the taxpayer's personal use, <u>United States v. Thetford</u>, 676 F.2d 170, 175 (5th Cir. 1982); using a corporation to disguise the personal nature of expenses, <u>Truesdell v. Commissioner</u>, 89 T.C. 1280, 1302-1303 (1987); and failing to cooperate with tax authorities, <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307 (9th Cir. 1986); <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 700.

The Gilchrists' conduct during the years in issue is laden with these indicia of fraud. The Gilchrists substantially understated their individual tax liability during the years in issue by failing to report income diverted from Door Control. These diversions were concealed from their return preparer. In addition, the Gilchrists misclassified personal entertainment, travel, and utility expenses as business expenses and used Door Control to deduct such expenses. During the examination, Mr. Gilchrist provided numerous false and misleading answers to Revenue Agent Caid's questions. As a result, we conclude that the Gilchrists intended to evade taxes.

With respect to Door Control's corporate returns, the requisite intent to evade taxes is similarly present. A corporation can act only through its officers and does not escape responsibility for acts of its officers performed in that

capacity.  Federbush v. Commissioner, 34 T.C. 740, 749 (1960), affd. 325 F.2d 1 (2d Cir. 1963); DiLeo v. Commissioner, 96 T.C. 858, 875 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  It follows that corporate fraud necessarily depends upon the fraudulent intent of the corporate officers.  Auerbach Shoe Co. v. Commissioner, 216 F.2d 693 (1st Cir. 1954), affg. 21 T.C. 191 (1953); Federbush v. Commissioner, supra at 749.

Door Control substantially understated its tax liability by failing to report income diverted to the Gilchrists' personal bank accounts.  Door Control also claimed deductions for the payment of personal expenses of the Gilchrists.  All of these transactions were concealed from petitioners' return preparer.  In addition, Mr. Gilchrist, in his capacity as an officer of Door Control, misled Revenue Agent Caid when he told him that corporate funds were kept separate from personal funds.  These facts establish that Door Control intended to evade taxes relating to 1986, 1987, and 1988.

On its 1985 return, Door Control claimed a carryback of a net operating loss from 1988.  The reported loss resulted from Door Control's failure to report $105,891.87 of income.  Where a deficiency is caused by the carryback of a fraudulent loss, the deficiency is attributable to fraud.  Toussaint v. Commissioner, T.C. Memo. 1984-25, affd. 743 F.2d 309 (5th Cir. 1984).  As a result, we conclude that Door Control intended to evade tax relating to 1985.

Petitioners contend that they relied on their accountant and were negligent, but not fraudulent, in understating their income. A taxpayer can avoid liability for fraud by establishing reliance on an accountant where the accountant was provided with adequate information from which to prepare the returns. Estate of Temple v. Commissioner, 67 T.C. 143, 162 (1976); Morris v. Commissioner, T.C. Memo. 1992-635, affd. without published opinion 15 F.3d 1079 (5th Cir. 1994). Petitioners rely on Compton v. Commissioner, T.C. Memo. 1983-647, as support for their contention. In Compton, the taxpayer understated income derived from his logging business. We determined that the understatements were due to the negligence of the taxpayer's return preparer. The taxpayer had provided his accountant with all information necessary to accurately calculate his tax liability. The accountant, however, understated the taxpayer's income, as well as the taxpayer's deductions. When the Internal Revenue Service commenced an audit of the taxpayer's returns, he cooperated fully. We concluded that the taxpayer was not liable for the addition to tax for fraud.

The present case is readily distinguishable from Compton. The Gilchrists, unlike the taxpayer in Compton, did not give their return preparer all the information necessary to accurately calculate their tax liability. Mr. Crim was not informed that corporate income had been deposited into personal accounts. In addition, the Gilchrists, unlike the taxpayer in Compton, did not

fully cooperate with revenue agents. Mr. Gilchrist withheld information concerning the number and location of their personal bank accounts. The Gilchrists also gave inconsistent explanations with respect to various items. Moreover, the engagement letters executed by the Gilchrists explicitly stated that Mr. Crim would simply prepare the returns from information provided and would not be responsible for investigating the accuracy of such information. Thus, petitioners had the burden of providing accurate information to Mr. Crim.

Furthermore, the disparity between the gross income reported on the individual returns (i.e., ranging from ($582) to $13,144) and the amounts omitted (e.g., diverted corporate income of $94,983.42 in 1986, $66,173.01 in 1987, and $105,891 in 1988) is so great that the Gilchrists could not reasonably have overlooked it when they signed the returns. Estate of Temple v. Commissioner, supra at 163-164. Consequently, the Gilchrists' contention is unpersuasive.

The Gilchrists also contend that imposition of the additions to tax for fraud under section 6653(b) following their conviction under section 7206(1) constitutes a second punishment for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. We disagree. Where the addition to tax under section 6653(b) is assessed following a conviction under section 7201 for criminal tax evasion, the addition to tax does not constitute a second

punishment.  <u>Ianniello v. Commissioner</u>, 98 T.C. 165 (1992).

Moreover, where the addition to tax is assessed following a

conviction under section 7206(1) for willfully making a false

return, the addition to tax under section 6653(b) does not relate

to the same offense.  See <u>McNichols v. Commissioner</u>, T.C. Memo.

1993-61, affd. 13 F.3d 432 (1st Cir. 1993).  Consequently, we

conclude that the Gilchrists' contention is without merit.

Finally, the Gilchrists contend that the criminal proceeding

determined that they owe no more than $115,564.30 and that

respondent is collaterally estopped to collect tax, including

additions to tax, in excess of that amount.  At the Gilchrists'

sentencing hearing, the presiding judge carefully explained that

the amount of tax ultimately assessed could exceed $115,564.30

and that the Gilchrists would be obligated to pay the additional

amount.  The judge explained as follows:

> THE COURT:  * * * if, for example, you have your
> contest with the Internal Revenue Service and it is
> determined that you owe $80,000, then the total
> restitution you would have to pay would be $80,000.  If
> it is $180,000, you would still owe the Government
> $180,000, 115 of which would be this restitution; do
> you understand?
>
> MRS. GILCHRIST:  Yes, sir.
>
> MR. GILCHRIST:  (Nods.)

As a result, we conclude that the U.S. District Court did not

determine that the tax owed, including additions to tax, could

not exceed $115,564.30, and respondent is not collaterally

estopped.

Accordingly, we hold that petitioners are liable for the additions to tax for fraud as determined by respondent.

We have considered all other arguments made by petitioner and respondent and found them to be either irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.